**PHP LIQUIDATING, LLC, Plaintiff,**

v.

**Charles H. ROBBINS, et al., Defendants.**

**No. CIV.A.01–236–JJF.**

United States District Court, D. Delaware.

March 7, 2003.

---

Neal J. Levitsky, Agostini, Levitsky, Isaacs & Kulesza, Wilmington, Delaware. Of Counsel: Gerald H. Gline and Warren A. Usatine, Cole, Scholz, Meisel, Forman & Leonard, P.A., Hackensack, New Jersey, for PHP Liquidating, LLC.

William P. Bowden, Gregory A. Taylor, Ashby & Geddes, Wilmington, Delaware. Of Counsel: William M. Goldman and Elizabeth Storch, Sidley, Austin, Brown & Wood, LLP, New York City, Merrill Lynch, Pierce, Fenner & Smith Incorporated.

David S. Eagle, Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, Wilmington, Delaware. Of Counsel: Raniero D'Aversa, Jr., Claudius O. Sokenu, Mayer, Brown, Rowe & Maw, New York City, for Defendants Q Funding, L.P. and $R^2$ Investments, LDC.

Jeffrey C. Wisler, Karen C. Bifferato, Connolly, Bove, Lodge & Hutz, LLP, Wilmington, Delaware, for Michael B. Sirkin, Janice Phoenix, Edward F. McGehrin, Frances R. McGehrin, and The McGehrin Family Trust.

John G. Harris, Reed Smith, LLP, Wilmington, Delaware, for Elara Ltd.

William A. Hazeltine, Potter, Anderson & Corroon, LLP, Wilmington, Delaware. Of Counsel: Ronald L. Cohen, Mark D. Kotwick, Seward & Kissel, LLP, New York City, for Lakeshore International Ltd.

N. Jane Dubovy, Law Offices of N. Jane Dubovy, Pacific Palisades, California, for Harry Mehterian, Jolana Mehterian, and The Mehterian Family Living Trust.

Dawn E. Mulholland, pro se of Executive Nurse Home Care, Inc., Port Washington, New York, Representing Defendant Executive Nurses Home Care, Inc.

Thomas J. Allingham, II, Anthony W. Clark, Darryl A. Parson, Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmington, Delaware., for Charles H. Robbins.

Stuart M. Brown, Buchanan Ingersoll, PC, Wilmington, Delaware. Of Counsel:

James T. Markus, Donald J. Quigley, Block Markus Williams, LLC, Denver, Colorado, for ProFutures Special Equities Fund, L.P. and ProFutures Fund Management, Inc.

### MEMORANDUM OPINION

FARNAN, District Judge.

Currently before the Court are the Motion of Charles H. Robbins to Dismiss the Amended Complaint (D.I.43) and the Motion by Defendants ProFutures Special Equities Fund, L.P. and ProFutures Fund Management, Inc. ("ProFutures") [1] to Dismiss the Amended Complaint (D.I.38). For the reasons discussed below, the Court will grant both motions.

### FACTS

In November 1998, PHP Healthcare Corporation ("PHP Corporation") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Subsequently, PHP Liquidating LLC ("PHP LLC") was created pursuant to the Second Amended Joint Plan of Liquidation for PHP Corporation ("the Plan"), which was confirmed by the Bankruptcy Court in October 1999. PHP LLC was established to liquidate assets of PHP Corporation in furtherance of the Plan and for the sole benefit of PHP LLC's members, who were the creditors of PHP Corporation. PHP LLC is not the same entity as PHP Corporation but, with exceptions not relevant here, is the assignee of all rights, titles, and interests in and to all causes of action of PHP Corporation. Additionally, PHP LLC possesses the express power to investigate, institute, compromise, dismiss, or pursue in litigation any and all such claims of PHP Corporation. Pursuant to the Plan, creditors were also given the option to assign and transfer to PHP LLC their claims and causes of action. One hundred nineteen creditors assigned their claims against Defendants to PHP LLC.

Defendant Charles H. Robbins ("Robbins") was the founder and a director of PHP Corporation from 1976 until January 31, 1997. On April 30, 1998, Robbins; his wife, Ellen E. Robbins; and his children, Caroline H. Robbins and Lee S. Robbins (collectively, the "Robbins Family"), entered into a Stock Repurchase Agreement with PHP Corporation, pursuant to which PHP Corporation repurchased 1 million shares of PHP common stock for $16.75 per share. On April 30, 1998, the price per share of PHP Common Stock closed at $17.56 on the New York Stock Exchange ("NYSE").

ProFutures is an investment fund that purchased 1,000 shares of PHP Corporation's preferred stock on December 19, 1997. PHP Corporation redeemed the preferred stock owned by Profutures on June 4, 1998, by way of a wire transfer to a bank account maintained by Dain Raucher, Inc., a stockbroker.

In Count One of its Amended Complaint, PHP LLC contends that PHP Corporation redeemed stock owned by Robbins and ProFutures (collectively, "Defendants") when PHP Corporation had no surplus capital, in violation of Section 160(a)(1) of the Delaware General Corporation Law ("DGCL"), and thus, PHP LLC seeks to recover the proceeds of these allegedly illegal stock redemption transactions.

---

**1.** Although ProFutures Fund Management, Inc. did not redeem PHP Corporation stock, it is allegedly liable to PHP LLC because it is the general partner of ProFutures Special Equities Fund, L.P.

In Count Two of its Amended Complaint, PHP LLC contends that the redemption transactions between PHP Corporation and Defendants were fraudulent transfers of property under federal and state law and thus are recoverable by PHP LLC.

## LEGAL STANDARD

The instant motions to dismiss are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable here by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In reviewing a motion to dismiss for failure to state a claim, "all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party." *Sturm,* 835 F.2d at 1011; *see also Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Jordan,* 20 F.3d at 1261.

## DISCUSSION

### I. Count One: Violation of Section 160 of the DGCL

As to Count One of the Amended Complaint, Defendants present three argu-

ments in support of dismissal: (1) PHP LLC's claim is barred by Section 546(e) of Title 11 of the United States Code (the "Bankruptcy Code"); (2) PHP LLC's Amended Complaint does not identify any Delaware statute [2] or controlling precedent creating a state avoidance action that allows creditors to avoid the stock repurchase and force the disgorgement of settlement payments that were paid to shareholders, who, in good faith, engaged in a securities transaction through a stockbroker; and (3) assuming that such an avoidance action existed, PHP LLC does not have standing in its capacity as an assignee of creditors to assert any such claim because the creditors did not have standing to commence avoidance actions.

In response, PHP LLC contends that Delaware law allows creditors to recover the purchase price from former stockholders where the purchase violated Section 160 of the DGCL. Additionally, PHP LLC contends that because it asserts its Section 160 claims as the direct assignee of unsecured creditors, and not as a trustee or successor to a debtor-in-possession, PHP LLC's claims are not barred by Section 546(e) of the Bankruptcy Code.

Section 160 of the DGCL, which prohibits a corporation from purchasing its own shares when its capital is impaired, provides:

> Every corporation may purchase, redeem, receive, take or otherwise acquire ... its own shares; provided, however, that no corporation shall ... [p]urchase or redeem its own shares of capital stock for cash or other property when the

**2.** Robbins contends that a choice of law clause in the Stock Repurchase Agreement dictates that it is governed by the laws of Virginia, and thus, as to Robbins, all of PHP LLC's claims based on Delaware law must fail. However, the Court assumes, without deciding, that Delaware law applies. The end result of either analysis is the same—dismissal.

capital of the corporation is impaired or when such purchase or redemption would cause any impairment of the capital of the corporation. . . .

8 *Del. C.* § 160(a)(2002). Based on the facts presented in PHP LLC's Amended Complaint, which the Court accepts as true, PHP Corporation violated Section 160 when it purchased Defendants' shares while its capital was impaired. The issue presented is whether PHP LLC has a cause of action against Defendants for PHP Corporation's violation of Section 160.

### A. Does Section 546(e) of the Bankruptcy Code Bar PHP LLC's Cause of Action?

■ Section 544(b) of the Bankruptcy Code, which addresses a trustee's or a debtor-in-possession's avoidance powers, provides:

[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim. . . .

11 U.S.C. § 544(b)(2002). Under Section 544(b), a trustee or debtor-in-possession is empowered to bring an avoidance action for a debtor's violation of Section 160 of the DGCL.

However, Section 546(e) of the Bankruptcy Code, which bars certain avoidance actions, provides: "the trustee may not avoid a transfer that is a . . . settlement payment . . . made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, or securities clearing agency, that is made before the commencement of the case. . . ." 11 U.S.C. § 546(e)(2002). The Bankruptcy Code defines a settlement payment as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on

account, a final settlement payment, or any other similar payment commonly used in the securities trade. . . ." 11 U.S.C. § 741(8)(2002). Additionally, the Court of Appeals for the Third Circuit has stated that "[i]n the securities industry, a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." *In re Resorts Intern., Inc.,* 181 F.3d 505, 515 (3d Cir. 1999). In sum, even where the debtor redeemed securities in violation of Section 160 of the DGCL, a trustee or debtor-in-possession may not use its Section 544(b) avoidance powers if the transaction was completed through a stockbroker.

In the instant case, the Court concludes, based on the broad definition set forth in *Resorts Intern,* that the stock redemptions at issue were settlement payments, and PHP LLC concedes that Defendants' sales of PHP Corporation stock were cleared through stockbrokers. (D.I. 44 at 7). Thus, the Court concludes that if the avoidance action were brought by a trustee or a debtor-in-possession (or the successor to a debtor-in-possession), the avoidance action would be barred by Section 546(e) of the Bankruptcy Code. However, in this case, PHP LLC has not asserted its claims against Movants in the capacity of a trustee or as a successor-in-interest to a trustee or debtor-in-possession. Rather, PHP LLC is bringing the instant claims as a direct assignee of the unsecured creditors. As such, Section 546(e) is not a bar to PHP LLC's claims. However, that is not the end of the inquiry. The Court must examine whether these creditors have a remedy under Delaware law such that their rights to bring an action can be assigned to PHP LLC.

### B. Do Creditors Have a Remedy Under Delaware Law for Violations of Section 160 of the DGCL?

■ Defendants contend that no statutory authority exists under Delaware law

for a creditor, or the assignee of a creditor, to recover from a shareholder for a violation of Section 160 and that no controlling case law recognizes a creditor's right to recover from a shareholder for a violation of Section 160. PHP LLC contends that because a stock purchase which violates Section 160 is void, the Court should imply a remedy against former stockholders for the purchase price.

Section 160 prohibits a Delaware corporation from purchasing its own stock when its capital is impaired but is silent as to a remedy for such a violation. Three other code sections of the DGCL provide possible remedies for violations of Section 160, but the Court concludes that none of the three are applicable here.

*1. Section 124 of the DGCL*

Section 124 of the DGCL limits the application of the *ultra vires* doctrine in Delaware and provides:

> No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted:
>
> (1) In a proceeding by a stockholder against the corporation . . . . ;
>
> (2) In a proceeding by the corporation, whether acting directly or through a receiver, trustee or other legal representative, or through stockholders in a representative suit, against an incumbent or former officer or director of the corporation, for loss or damage due to such incumbent or former officer's or director's unauthorized act;
>
> (3) In a proceeding by the Attorney General. . . .

8 *Del. C.* § 124 (2002) (emphasis added). Section 124 specifically states that a corporation's lack of capacity or power to engage in a transaction shall not invalidate the transaction unless one of the three delineated exceptions applies. In the instant case, PHP Corporation redeemed stock when, pursuant to Section 160, it lacked the authority to do so. However, Section 124 explicitly disallows PHP LLC from using PHP Corporation's violation of Section 160 to invalidate the redemption transactions. Thus, PHP LLC cannot obtain relief from Defendants based on PHP Corporations violation of Section 160. Moreover, the exceptions set forth in Section 124 are inapplicable to the case at bar by their plain language. This is not a proceeding brought by a stockholder against the corporation as allowed by Section 124(1). Additionally, this is not a proceeding against an incumbent or former officer or director of the corporation as allowed by Section 124(2). Finally, this is not a proceeding by the Attorney General as allowed by Section 124(3). Thus, the Court concludes that Section 124 of the DGCL does not provide PHP LLC with a remedy for violations of Section 160.

*2. Section 174 of the DGCL*

Section 174(a), the second code section that addresses violations of Section 160, provides:

> In case of any wilful or negligent violation of § 160 or 173 of this title, the directors under whose administration the same may happen shall be jointly and severally liable, at any time within 6 years after . . . such unlawful stock purchase or redemption, to the corporation, and to its creditors in the event of its dissolution or insolvency, . . . to the full amount unlawfully paid for the purchase or redemption of the corporation's stock. . . .

8 *Del. C.* § 174(a)(2002). This statute provides a remedy against directors, not stockholders, for violations of Section 160.

In *The Delaware Law of Corporations and Business Organizations,*[3] the authors state that "[t]here is no statute imposing liability on stockholders who receive unlawful dividends." Similarly, there is also no statute imposing liability on stockholders who receive payments for unlawful stock redemptions. Nonetheless, Section 174(c) of the DGCL grants directors found liable for unlawful stock redemptions the right "to be subrogated to the rights of the corporation against stockholders who received ... assets for the sale or redemption of their stock with knowledge of facts indicating that such ... redemption was unlawful ...." 8 *Del. C.* § 174(c)(2002). "This suggests that the shareholder will be liable for any amount received by him but only if he had notice that the dividend was unlawful." *The Delaware Law of Corporations and Business Organizations, supra,* § 5.32. Stated another way, shareholder liability requires bad faith. Thus, stockholders who redeem their stock in good faith are not liable to the corporation.

In the instant case, Defendants sold their stock through stockbrokers and there are no allegations that Defendants were aware that PHP Corporation's capital was impaired. Thus, the Court concludes that Defendants redeemed their stock in good faith. Accordingly, the Court concludes that Section 174 of the DGCL does not provide PHP LLC with a cause of action against Defendants.[4]

### 3. Implied Remedy for Section 160 Violations

PHP LLC cites *In re Kettle Fried Chicken of America, Inc.,* 513 F.2d 807, 812–13 (6th Cir.1975) in support of its argument that the Court should imply a remedy against former stockholders for PHP Corporation's violation of Section 160. In *Kettle Fried Chicken,* the court implied a cause of action against former stockholders under Section 160 of the DGCL. In the instant case, the Court concludes that the reasoning of *Kettle Fried Chicken,* which is not binding on this Court, is unpersuasive and is contrary to Delaware's statutory scheme. As discussed above, Delaware's statutory scheme specifically lists the circumstances in which a Section 160 cause of action can be asserted and to imply an additional cause of action in these circumstances would undermine the established statutory scheme. Moreover, the Court finds that the circumstances of the instant case are distinguishable from those in *Kettle Fried Chicken.* In *Kettle Fried Chicken,* the bankruptcy trustee brought the action. In the instant case, PHP LLC, standing in the shoes of PHP Corporation's third-party creditors, is the party seeking disgorgement of funds received by former shareholders. Thus, the Court concludes that Delaware law does not give individual creditors an implied remedy against shareholders for a corporation's violation of Section 160.

### C. Does PHP LLC Have Standing?

In the alternative, even if Delaware law provided a remedy for Section 160 violations in these circumstances, Defendants contend that PHP LLC does not have standing to assert any such claim in its capacity as assignee of individual creditors

---

**3.** 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 5.32 (3d Ed.2002)

**4.** The Delaware Fraudulent Transfer Act ("DFTA"), 6 *Del. C.* § 1301 *et seq.* (2002), also provides a remedy for violations of Section 160; however, PHP LLC concedes that the DFTA is inapplicable to Count One of the Amended Complaint. *See* D.I. 44 at 2.

because the individual creditors did not have standing that they could assign to PHP LLC. Defendants present two arguments in support of their contention that the individual creditors and PHP LLC, as the creditors' assignee, do not have standing to assert this action.

First, Defendants contend that the Bankruptcy Code and supporting case law make it clear that only trustees and debtors-in-possession have standing to bring a general claim such as the violation of Section 160 at issue here. In response, PHP LLC, relying on *Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), contends that creditors do have standing to maintain an action for a violation of Section 160.

■ Section 544(b) of the Bankruptcy Code grants only trustees or debtors-in-possession standing to pursue general claims held by the debtor's creditors. *See* 11 U.S.C. § 544(b)(2002); *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir.1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action. . . ."); *In re Sunshine Precious Metals, Inc.*, 157 B.R. 159, 163 (Bankr.D.Idaho 1993) ("A creditor of a debtor does not have standing to assert an action against a third party if the creditor has only suffered a general injury. . . ."). Whether an action accrues to a creditor individually, such that a creditor has standing, or generally, such that a trustee has standing, requires the court to look "to the injury for which relief is sought and consider whether it is peculiar and personal to the [creditor] or general and common to the . . . creditors." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*,

831 F.2d 1339, 1349 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). "A cause of action is 'personal' if the claimant [or creditor] himself is harmed and no other claimant or creditor has an interest in the cause." *Id.* at 1348. A cause of action is general if the injury is common to all creditors. *Id.* at 1349.

■ In the case of claims brought under Section 160, the Court finds the purpose of the statute to be instructive in determining whether Section 160 claims are general or personal. The purpose of Section 160 is to protect a corporation's creditors. *Askanase v. Fatjo*, 130 F.3d 657, 675 (5th Cir. 1997) ("The purpose of the statute [Section 160 of the DGCL] is to protect creditors."); *In re Reliable Mfg. Corp.*, 703 F.2d 996, 1001 (7th Cir.1983) ("The prohibition against a corporation's acquiring its own stock when to do so would impair its capital is intended to protect creditors.") (citing *Propp v. Sadacca*, 175 A.2d 33, 38 (Del.Ch.1961), *aff'd in part and rev'd in part*, 187 A.2d 405 (Del.1962)). Because Section 160 protects all creditors rather than just one individual creditor, the Court concludes that violations of Section 160 are general claims that accrue to all creditors, and therefore, PHP LLC, as an assignee of individual creditors, lacks standing under Section 544(b) of the Bankruptcy Code to bring the instant action.

The Court also concludes that PHP LLC's reliance on *Caplin* is misplaced. *Caplin*'s facts are inapposite to those at issue here because *Caplin* involved personal claims rather than general claims. Further, the issue in *Caplin* focused on whether the trustee could bring such claims. That inquiry is not the issue in this case, as the trustee is not the party bringing the claims.

Defendants' second argument that the individual creditors and PHP LLC, as the

creditors' assignee, do not have standing to assert the instant action is based on the language of the Plan. Under the terms of the Plan, Defendants contend that creditors have no standing to assign Section 160 claims because such claims were transferred as a matter of law from PHP Corporation as debtor-in-possession to its successor, PHP LLC. In response, PHP LLC contends that the creditors assigned their claims to PHP LLC under an express provision of the Plan.

As discussed above, claims for violations of Section 160 are general claims that are held, in bankruptcy, by a trustee or a debtor-in-possession. Exhibit 1.1.24 of the Plan provides that among that which is "assigned to the Liquidating LLC by operation of the Plan" are

> *any claims,* causes of action, demands or obligations arising or existing in favor of the Debtor, Debtor in Possession, or its bankruptcy estate under sections 544, 547, 548, 549, 550, and 553(b) of the Bankruptcy Code, and any similar statutes under applicable nonbankruptcy law, *including, without limitation, claims under Section 160 of the Delaware General Corporate Law....*

(D.I.44, Ex. A) (emphasis added). Based on the above language, the Court concludes that the Section 160 claims, which were claims held by PHP Corporation as a debtor-in-possession during its Chapter 11 proceedings, were transferred from PHP Corporation as debtor-in-possession to PHP LLC and therefore could not be assigned by individual creditors because the individual creditors never possessed the claims.

PHP LLC contends that the creditors assigned their claims to PHP LLC pursuant to Section 3.2.4.6 of the Plan, which, in relevant part, provides:

> *Optional Assignment of Claims:* Each holder of an Allowed Unsecured Claim

shall have the option of assigning and transferring to the Liquidating LLC any and all claims for money due or owing to such holder from, any and all causes of action of whatever kind or nature that such holder has or may have against ... any former or current preferred or common shareholders of the Debtor ... for any loss, injury or damages sustained by such holder, whether arising under applicable bankruptcy or non-bankruptcy law....

(D.I. 44, Ex. A at 16). Section 3.2.4.6 allows creditors to assign claims to PHP LLC; however, the creditor must first have a claim to assign. As discussed above, the individual creditors did not possess claims for violations of Section 160, because the claim are general claims which could only be brought by PHP Corporation as debtor-in-possession. Therefore, because the creditors did not have standing to bring claims under Section 160, the creditors could not assign them pursuant to Section 3.2.4.6. Accordingly, the Court concludes that PHP LLC, in its capacity as assignee of individual creditors, does not have standing to assert claims for violations of Section 160 of the DGCL.

## II. Count Two: Fraudulent Transfer of Property

### A. Defendant Robbins

█ Robbins contends that Count Two of PHP LLC's Amended Complaint is facially deficient in that it does not allege sufficient facts to state a fraudulent transfer claim. Robbins contends that to properly allege a claim for fraudulent transfer under federal and state law, PHP LLC must allege that PHP Corporation received less than reasonably equivalent value for the challenged transfer *and* that PHP Corporation was insolvent on the date such obligation was incurred or ren-

dered insolvent by the transfer.[5] Robbins contends that PHP LLC's Amended Complaint does not allege that PHP Corporation received less than reasonably equivalent value for the challenged transfer. Robbins further contends that PHP Corporation received more than equivalent value for the transfer because, on the day of the stock redemption transaction, PHP Corporation's NYSE price was higher than the price PHP Corporation paid Robbins for his shares.

In response, PHP LLC contends that it has stated a valid fraudulent transfer claim. PHP LLC also contends that Robbins' arguments go to the merits of the fraudulent transfer claim and thus are inappropriate at this stage of the proceedings.

In relevant part, the fraudulent transfer provisions of the Bankruptcy Code provide:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property ... if the debtor voluntarily or involuntarily—

(A) made such transfer ... with actual intent to hinder, delay, or defraud ...; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obli-

gation was incurred, or became insolvent as a result of such transfer or obligation....

11 U.S.C. § 548 (2002).[6] The provisions of the Delaware Fraudulent Transfer Act ("DFTA"), 6 *Del. C.* § 1301 *et seq.* (2002), are substantially the same as those in the Bankruptcy Code. *Compare* 11 U.S.C. § 548 (2002) *with* 6 *Del. C.* §§ 1302–1306 (2002).

In the instant case, to properly plead a fraudulent transfer claim, PHP LLC would have had to allege that when PHP Corporation redeemed Robbins' stock, PHP Corporation received less than a reasonably equivalent value for the stock and that PHP Corporation was insolvent or was made insolvent by the redemption transaction. In Count Two of the Amended Complaint, PHP LLC does not allege that PHP Corporation received less than a reasonably equivalent value for the redeemed stock. (D.I. 29 at 7–8). Thus, the Court concludes that Count Two of PHP LLC's Amended Complaint is facially deficient. Additionally, the Court finds that PHP Corporation received reasonably equivalent value for the transfer because, on the day of the stock redemption transaction, PHP Corporation's NYSE price was higher than the price PHP Corporation paid for Robbins' shares. On April 30, 1998, PHP Corporation repurchased 1 million shares of PHP common stock for

---

**5.** Robbins presents SEC filings of PHP Corporation to demonstrate that PHP Corporation was solvent at the time the Stock Repurchase Agreement was executed; however, for purposes of this Motion, the Court will assume that the allegation that PHP Corporation was insolvent at the relevant time is true.

**6.** Robbins' Opening Brief (D.I. 43 at 16) does not discuss the actual fraud prong of the fraudulent transfer statute. In fact, in footnote twelve, Robbins quotes 11 U.S.C. § 548 with subsection (a)(1)(A), pertaining to fraud, deleted and does not indicate the omission by

using the generally accepted convention of inserting an ellipsis. PHP LLC's Response Brief (D.I.56) also does not discuss the actual fraud prong of the fraudulent transfer statute. Moreover, PHP LLC's Amended Complaint does not allege that PHP Corporation redeemed Robbins' stock with the actual intent to defraud. For these reasons, and because Federal Rule of Civil Procedure 9(b) requires averments of fraud to be plead with particularity, the Court will not further address 11 U.S.C. § 548(a)(1)(A).

$16.75 per share from Robbins. (D.I.43, Ex. A). Pursuant to Federal Rule of Evidence 201,[7] the Court takes judicial notice that, on April 30, 1998, the price per share of PHP Common Stock closed at $17.56 on the NYSE. (D.I.43, Ex. C). Based on the above, the Court concludes that PHP LLC cannot prove any set of facts showing that PHP Corporation did not receive reasonably equivalent value in the stock redemption transaction. Accordingly, the Court concludes PHP LLC has not stated a claim for which relief can be granted in Count Two of the Amended Compliant.

### B. Defendant ProFutures

■ ProFutures contends that Count Two of PHP LLC's Amended Complaint is facially deficient because it does not allege sufficient facts to state a fraudulent transfer claim. Specifically, ProFutures contends that PHP LLC's Amended Complaint does not allege that PHP Corporation redeemed the shares owned by Pro-Futures with the actual intent to defraud PHP Corporation's creditors and does not allege that PHP Corporation did not receive reasonably equivalent value from ProFutures in the redemption transaction. ProFutures also contends that it meets the good faith exception to the fraudulent transfer statutes. *See* 11 U.S.C. § 548 (2002); 6 *Del. C.* § 1308 (2002).

In response, PHP LLC contends it has stated a valid fraudulent transfer claim in its Amended Complaint. PHP LLC also contends that ProFutures' attempt to raise the affirmative defense of good faith is inappropriate at this stage of the proceeding.

In Count Two of its Amended Complaint, PHP LLC alleges that PHP Corporation's redemption of ProFutures' stock was a fraudulent transfer of property because PHP Corporation was insolvent at the time or made insolvent by the transaction. (D.I. 29 at 7). However, it takes more than allegations of insolvency to properly plead a cause of action under the relevant fraudulent transfer statutes.

After reviewing Count Two of PHP LLC's Amended Complaint, the Court concludes that PHP LLC has not alleged that PHP Corporation redeemed the shares owned by ProFutures with the actual intent to defraud PHP Corporation's creditors. In addition, PHP LLC has not alleged that PHP Corporation did not receive reasonably equivalent value from ProFutures in the redemption transaction. Because of these omissions, and because Federal Rule of Civil Procedure 9(b) requires averments of fraud to be plead with particularity, the Court concludes that Count Two of PHP LLC's Amended Complaint fails to state a claim upon which relief can be granted.

### CONCLUSION

For the reasons discussed, Defendants' Motions to Dismiss will be granted.

---

7. Pursuant to Federal Rule of Evidence 201, a "[c]ourt is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered." *In re Delmarva Sec.*

*Litig.*, 794 F.Supp. 1293, 1299 (D.Del.1992). Specifically, published stock prices fall within the category of information that can be judicially noticed. *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 598 (3d Cir.2000).